UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BUNGE-SCF GRAIN, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:14-cv-00460-JPG-DGW |
| | ) | |
| MOROVILLE FARMS, INC., and | ) | |
| ROBERT ZOELZER, | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Bunge-SCF Grain, LLC ("BSG"), by and through its counsel, and brings this action against Moroville Farms, Inc., and Robert Zoelzer (collectively "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Moroville Farms' delivery of adulterated, contaminated, and non-conforming soybeans to BSG's grain elevator located in Fairmont City, Illinois.

2. The soybeans delivered by Moroville Farms were contaminated and comingled with treated wheat seeds – *i.e.*, seeds meant for planting as opposed to wheat for food or feed uses. Treated seeds are not allowed in the commercial feed and food supply. In fact, the United States Environmental Protection Agency ("EPA") has set low tolerances—and, in some cases, no tolerance at all (meaning none is allowed)—for the presence of pesticides, in the commercial grain supply. Therefore, consistent with federal law, BSG maintains a zero tolerance policy for the delivery of any treated seed at its facilities, which means that no grain containing treated seed may be delivered. BSG prominently displays and publicizes its policy to all those delivering to BSG facilities.

3. Moroville Farms failed to abide by the BSG policy, the standard of care, and the recognized standards of the industry to prevent contamination of delivered grain with treated seed. Moroville Farms loaded a truck with soybeans that it had previously used to haul treated wheat seeds without properly cleaning the truck between uses. As a result, treated wheat seeds remained in Moroville Farms' truck, underneath the soybeans.

4. On or about November 14, 2013, Moroville Farms delivered a load of soybeans—contaminated with treated wheat seeds—to BSG's grain elevator in Fairmont City, Illinois, thus contaminating the contents of one of BSG's large bins. As soon as BSG discovered that Moroville Farms had contaminated its grain facility, BSG immediately shut down the receiving pit (Pit 2) into which the contaminated soybeans were dumped and the large bin containing soybeans to avoid further contamination.

5. Despite admitting responsibility for the contamination, Moroville Farms refuses to accept liability for the damages it has caused—and continues to cause— BSG. BSG continues to incur daily demurrage charges because the contaminated and adulterated soybeans are not fit for consumption and because Moroville Farms refuses to dispose of the stored soybeans.

6. BSG suffered—and continues to suffer—damages as a direct result of Defendants' wrongful conduct.

## THE PARTIES

7. Plaintiff, BSG, is a limited liability company organized and existing under the laws of the State of Delaware. BSG's members are citizens of the States of New York, Delaware, and Missouri. BSG builds and operates state-of-the-art grain receiving facilities.

8. BSG's facility in Fairmont City, Illinois, is the site of the contamination at issue in this lawsuit.

9. Defendant Moroville Farms, Inc. is an Illinois corporation with its principal place of business in Madison County, Illinois.

10. Defendant Robert Zoelzer, co-owner of Moroville Farms, Inc., is a citizen of Illinois, residing in Madison County, Illinois.

11. Thomas Zoelzer, the other owner of Moroville Farms, Inc., is a citizen of Illinois, residing in Madison County, Illinois.

12. Based on the foregoing, complete diversity exists.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332 in that it arises between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, as set forth below.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE INCIDENT

15. On or about November 14, 2013, at approximately 1:45 p.m., Robert Zoelzer ("Zoelzer") arrived at BSG's grain elevator, located in Fairmont City, Illinois, to deliver a truckload of 661 bushels of soybeans.

16. BSG sampled the soybeans using routine procedures via automatic probing equipment. BSG did not discover the treated wheat seeds, which were on the bottom of the load, during this sampling procedure.

17. After the truck was weighed and the soybeans were graded, Zoelzer drove to Pit 2 to dump and deliver the soybeans.

18. As the soybeans were being dumped into Pit 2, they were simultaneously elevated into a large storage bin via a continuously running conveyor belt. The storage bin already contained soybeans.

19. As Zoelzer finished dumping the contents of his truck, a BSG employee discovered treated wheat seeds mixed with soybeans in the pit area. The treated wheat seeds were visible because they were dyed a pink color, as required by federal regulations, for identification purposes.

20. Zoelzer was present and observed the treated wheat seeds on the grate and in the area around Pit 2. He admitted to a BSG employee that his truck could have had some treated wheat seeds in it because the last load he had hauled prior to bringing the soybeans to the BSG elevator was treated wheat seeds.

21. After Zoelzer left BSG's facility, he called the facility and spoke with elevator manager Rick Bauwens ("Bauwens"). During that conversation, Zoelzer admitted again that he had recently hauled treated wheat seeds. He also admitted that he had seen treated wheat seeds on the pit grating after he delivered his load. Zoelzer called the facility another time on November 14, 2013, and told Bauwens that he had cleaned the rest of the treated wheat seeds from his truck and asked if he could deliver more soybeans. Bauwens told Zoelzer that BSG could not receive any soybeans due to the receipt of soybeans contaminated with treated wheat seeds.

22. BSG gathered two samples of the treated wheat seeds and sent them to an independent laboratory for testing.

23. The laboratory identified thiamethoxam, fluxofenim, and metalaxyl on the treated wheat seeds. None of these active ingredients are approved for food or feed.

24. Fluxofenim is harmful if swallowed or in contact with skin, fatal if inhaled, and extremely toxic to aquatic life. Those handling fluxofenim are instructed to wear protective gloves and clothing, wear respirator protection, and immediately call a poison center or doctor if they come into contact with the poison. Handlers are also instructed to contact a licensed professional waste disposal service to dispose of fluxofenim. Similar warnings and instructions apply to thiamethoxam and metalaxyl.

25. The EPA has not set a tolerance for the presence of fluxofenim in soybeans. Fluxofenim is not registered with the EPA. The EPA has not set a tolerance for the presence of thiamethoxam in soybeans. Therefore, there is zero tolerance for the presence of these chemicals in soybeans. The presence of these chemicals on soybeans renders the soybeans adulterated.

26. Moreover, seed bag label requirements for seeds treated with these chemicals must contain the warnings: "Do not use for feed, food, or oil purposes," "Store away from feeds and foodstuffs," "Dispose of all excess treated seed," and caution that "It is a violation of Federal law to use this product in a manner inconsistent with its labeling."

27. After removing the contaminated soybeans and cleaning out its facilities to remove all traces of treated wheat seeds, BSG loaded two barges from the bin containing soybeans.

28. BSG sampled the soybeans as these two barges were loaded setting the automatic pelican sampler on the fastest setting. Samples taken from the first barge contained treated wheat seeds and, thus, BSG was unable to resell the soybeans contained therein. The barge remains loaded and moored near Cairo, Illinois, and subject to daily demurrage charges.

29. BSG did not find any treated wheat seeds in the soybeans gathered by the sampler that were loaded onto the other barge.

30. On November 22, 2013 (following its oral notification on November 14, 2013), BSG provided written notice to the Defendants of the contamination.

31. Defendants' delivery of adulterated soybeans damaged the other property of BSG, including BSG's previously non-contaminated soybeans, with which Defendants' delivery became comingled, BSG's equipment, receiving facilities, and other property.

32. BSG's damages include, but are not limited to, the loss of value of the contaminated/adulterated soybeans, the cost of cleaning the pits, the bins, the conveyors, elevator legs and slides, the acquisition of barges into which the bins were unloaded, demurrage for the barges, the disposal of soybeans, and business interruption.

## COUNT 1 – BREACH OF CONTRACT

33. BSG repeats and realleges Paragraphs 1 through 32 as if fully set forth herein.

34. BSG and Defendants contracted for the sale and delivery of US #1 yellow soybeans.

35. Pursuant to the terms of that contract, Defendants were required to deliver unadulterated and uncontaminated US #1 yellow soybeans to BSG at a spot price set by BSG.

36. BSG inspected the load per its usual and customary procedures prior to acceptance but did not discover treated wheat seeds, which were in the bottom of the truck, in the load. BSG used reasonable and customary procedures to sample and test the soybeans prior to allowing Defendants' to unload their truck.

37. Defendants breached the parties' agreement by delivering soybeans to BSG that were contaminated with treated wheat seeds, rendering the delivered soybeans unmerchantable.

38. BSG has performed all conditions precedent to enforcement of this contract action.

39. As a result of Defendants' breaches of contract, BSG has sustained significant monetary and non-monetary damages including, but not limited to, the loss of value of the contaminated/adulterated soybeans, the cost of cleaning the pits, the bins, the conveyors, elevator legs and slides, the acquisition of barges into which the bins were unloaded, demurrage for the barges, the disposal of soybeans, and business interruption.

### COUNT 2 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

40. BSG repeats and realleges Paragraphs 1 through 39 as if fully set forth herein.

41. Defendants are merchants in grains, and soybeans are goods of that kind.

42. By virtue of Defendants' status as merchants of goods of the kind delivered to BSG, an implied warranty of merchantability arose that the soybeans would be fit for the ordinary purpose for which soybeans are used.

43. Defendants knowingly shipped to BSG soybeans that were so defective as to be unfit for ordinary purposes.

44. As a result of Defendants' breaches of the implied warranty of merchantability, BSG has sustained significant monetary and non-monetary damages including, but not limited to, the loss of value of the contaminated/adulterated soybeans, the cost of cleaning the pits, the bins, the conveyors, elevator legs and slides, the acquisition of barges into which the bins were unloaded, demurrage for the barges, the disposal of soybeans, and business interruption.

### COUNT 3 – NEGLIGENCE/NEGLIGENCE PER SE

45. BSG repeats and realleges Paragraphs 1 through 44 as if fully set forth herein.

46. Consistent with federal statutory and regulatory guidance, BSG has a zero tolerance policy for the delivery of treated seeds with other grains.

47. In addition, the Federal Food, Drug, and Cosmetic Act (FFDCA) prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food . . . that is adulterated or misbranded." 21 U.S.C. § 331.

48. By delivering soybeans contaminated with treated wheat seeds, Defendants breached the terms of 21 U.S.C. § 331 and failed to follow BSG's zero tolerance policy.

49. Defendants knew or should have known of their duty not to deliver treated wheat seeds into the feed and food supply.

50. Defendants owed a duty to BSG to ensure that the soybeans they delivered to BSG did not contain wheat seeds treated with harmful pesticides and were not adulterated.

51. Defendants delivered soybeans to BSG contaminated with treated wheat seeds in violation of federal laws and regulations, thus breaching their duty to BSG.

52. The area around Pit 2 had been swept clean prior to the arrival of Defendants' truck. Thus, Defendants' delivery to that pit was the only possible source of contamination and was the proximate cause of BSG's injury.

53. Defendants' conduct exposed BSG, through a hazardous product, to an unreasonable risk of property injury.

54. Defendants' delivery of treated wheat seeds to BSG caused a sudden, dangerous, and calamitous contamination of BSG's existing soybean inventory. Such contamination was highly dangerous and presented an immediate danger to BSG's property, as well as potential downstream users of BSG's soybean products.

55. Defendants' delivery of treated wheat seeds to BSG caused sudden and immediate harm in that, once BSG discovered the contamination, BSG had to immediately halt Pit 2

operations and stop the elevation of soybeans into the large bin to avoid any further contamination.

56. Defendants' delivery contaminated soybeans that were already in the bin. Thus, BSG was forced to halt its operations, clean its storage facilities, and unload the contaminated/adulterated soybeans into barges. BSG is unable to market the contaminated/adulterated soybeans stored on one barge and continues to incur demurrage charges on that barge.

57. As a result of Defendants' negligence, BSG has sustained significant monetary and non-monetary damages including, but not limited to, the loss of value of the contaminated/adulterated soybeans that were in BSG's facilities prior to the contamination, the cost of cleaning the pits, the bins, the conveyors, elevator legs and slides, the acquisition of barges into which the bins were unloaded, demurrage for the barges, the disposal of soybeans, and business interruption.

## **COUNT 4 – TRESPASS TO PERSONAL PROPERTY/CHATTEL**

58. BSG repeats and realleges Paragraphs 1 through 57 as if fully set forth herein.

59. Defendants intentionally and knowingly intermeddled with BSG's soybean and grain receiving facilities by delivering to BSG a truckload of soybeans that it knew was contaminated with treated wheat seeds, or Defendants recklessly disregarded that risk.

60. Defendants' contamination/adulteration of BSG's existing soybeans and grain receiving facilities constitutes injury to and interference with BSG's personal property.

61. Because of Defendants' actions, BSG was deprived of the use of the soybeans stored in its grain receiving facilities. BSG was also deprived of the use of its grain receiving facilities for nearly five full days.

62. As a result of Defendants' trespass to BSG's property, BSG has sustained significant monetary and non-monetary damages including, but are not limited to, the loss of value of the contaminated/adulterated soybeans, the cost of cleaning the pits, the bins, the conveyors, elevator legs and slides, the acquisition of barges into which the bins were unloaded, demurrage for the barges, the disposal of soybeans, and business interruption.

WHEREFORE, Plaintiff, Bunge-SCF Grain, LLC, prays for damages against Defendants granting the following relief:

1. Damages related to the loss of value of the contaminated/adulterated soybeans,
2. Damages related to the cost of cleaning the pits, the bins, the conveyors, elevator legs and slides,
3. Damages related to the acquisition of barges into which the bins were unloaded,
4. Demurrage costs for the soybean barges,
5. Damages related to business interruption, and
6. For any other relief this Court deems just and proper.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Kimberly M. Bousquet
Christopher M. Hohn, #6230989
Kimberly M. Bousquet, #6295944
Thompson Coburn, LLP
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
FAX (314) 552-7000
chohn@thompsoncoburn.com

kbousquet@thompsoncoburn.com

*Attorneys for Plaintiff Bunge-SCF Grain, LLC*